**In re the MARRIAGE OF Janine M. SLOWINSKI, Appellee,**

**and**

**Michael P. Pagnozzi, Appellant.**

**Nos. 05CA0465, 05CA2523, 06CA1830.**

Colorado Court of Appeals, Div. III.

Feb. 21, 2008.

As Modified on Denial of Rehearing May 1, 2008.

Cooper, Tanis, Fuller & Cohen, P.C., Robert M. Cooper, Leonard D. Tanis, Nova M. Chesebro, Broomfield, Colorado, for Appellee.

Springer & Steinberg, P.C., Michael P. Zwiebel, Denver, Colorado, for Appellant.

Opinion by Judge ROY.

In this post-dissolution of marriage proceeding, Michael P. Pagnozzi (father) appeals from orders restricting his parenting time, imposing sanctions on him for failure to comply with parenting time orders, and denying his motion to restrict the parenting time of Janine M. Slowinski (mother). We affirm in part and vacate in part.

Father and mother are the parents of two children. Their marriage was dissolved in early 2000, mother was designated as the primary residential custodian of the children, and she was granted sole decision-making responsibility for them. The court ordered extensive parenting time for father.

The events giving rise to this appeal commenced on June 3, 2004, three months after the parties entered into a stipulation to terminate several years of litigation concerning the children. On that day, the therapists for both children had an informal and unscheduled discussion over lunch with the former special advocate in which they expressed their concern that the children were emotionally endangered by father's behavior disparaging mother, primarily because of his anger over the events surrounding the dissolution of the marriage. The former special advocate notified the attorneys for both parents, and mother's attorney immediately filed a motion to restrict father's parenting time pursuant to section 14–10–129(4), C.R.S.2007, alleging that the children were in imminent physical or emotional danger. That afternoon, mother, accompanied by police, removed the children from father's custody.

Eleven days later, on June 14, 2004, the trial court, without a hearing, found that mother's motion was facially sufficient and ordered that father's parenting time be restricted pursuant to section 14–10–129(4) (supervised parenting time) and further ordered that the matter be set for a forthwith hearing.

The hearings commenced July 1, 2004. The trial court heard offers of proof and arguments of counsel, following which it found and ordered as follows:

The court finds that offers of proof establish that the predicate in part for the granting of the Court's motion is subject to specific evidentiary consideration as to the sufficiency of continued restricted parenting time under § 14–10–129(4) and § 14–10–129(1)(b)(I).

Therefore, the court orders that this matter be continued for a further evidentiary hearing as … to a finding of endangerment of the [children's] physical health or significant impairment of the [children's] emotional development.

The court then offered dates in the immediate future, vacated other matters previously set, and recognized that this was an urgent matter. The trial court then held several hearings extending to September 10, 2004, at which time the trial court interviewed the children.

On October 14, 2004, the court entered an order granting father unsupervised parenting time on alternating Saturdays from 11 a.m. to 6 p.m. In addition, father was required to complete a certified anger management course and a high conflict divorce parenting class as a condition precedent to the court's consideration of an expansion of his parenting time. Father's motion for reconsideration was denied. As a result, father was limited to supervised parenting time from July 12, 2004 to October 16, 2004.

In this appeal, father appeals a number of the trial court's orders. In case 05CA0465, he appeals the October 14, 2004 order resolving mother's June 3, 2004 imminent danger

motion to restrict visitation pursuant to section 14–10–129(4), and a trial court order of January 18, 2005, denying his timely C.R.C.P. 59 motion for reconsideration of the October 14, 2004 order.

In case 05CA2523, father appeals the trial court order of October 11, 2005, affirming on review a magistrate's order imposing sanctions on him for violating parenting time orders.

In case 06CA1830, father appeals orders which denied his motion to amend the parenting plan and a related matter for lack of jurisdiction, and dismissed his verified motion to restrict mother's parenting time without a hearing.

## I. Mootness

■ At the outset, we note that a court will not give its opinion on moot questions or abstract propositions. *Salter v. Bd. of County Comm'rs*, 133 Colo. 138, 140, 292 P.2d 345, 346 (1956). We were advised at oral argument that the orders on appeal have been superseded by subsequent orders entered under the trial court's continuing jurisdiction over parenting time issues and, therefore, the orders at issue are moot. *See In re Marriage of Chalat*, 112 P.3d 47, 53 (Colo. 2005) (continuing jurisdiction).

■ Nonetheless, we can address moot questions involving great public importance and issues capable of repetition yet evading review. *Simpson v. Bijou Irrigation Co.*, 69 P.3d 50, 71 (Colo.2003). Here, because of the short time frame of the statute and the impact of the immediate and automatic limitations on parenting time, we address the issues.

## II. Mother's Section 14–10–129(4) Motion

■ Father contends that the requirement of section 14–10–129(4) that a hearing be held and the motion ruled upon within seven days of filing is jurisdictional. We conclude that the trial court had personal and subject matter jurisdiction but lacked the authority to proceed under section 14–10–129(4) after failing to conduct the hearing as required by the statute.

Section 14–10–129(4) provides as follows:

A motion to restrict parenting time or parental contact with a parent which alleges that the child is in imminent physical or emotional danger due to the parenting time or contact by the parent *shall be heard and ruled upon by the court not later than seven days after the day of the filing of the motion. Any parenting time which occurs during such seven-day period after the filing of such a motion shall be supervised by an unrelated third party deemed suitable by the court or by a licensed mental health professional,* as defined in section 14–10–127(1)(b). This subsection (4) shall not apply to any motion which is filed pursuant to subsection (3) of this section [concerning parents convicted of crimes].

(Emphasis added.)

Section 14–10–129(4) immediately imposes supervised visitation, and states that a motion made pursuant to it "shall be heard and ruled upon by the court not later than seven days after the day of the filing of the motion." Here, the court's initial order, entered eleven days after the filing of the motion and without a hearing, essentially granted the motion, thereby extending the restriction on father's parenting time indefinitely while calling for a "forthwith" hearing. The first of several segments of that hearing occurred on July 1, 2004, and the last on October 11, 2004.

■ Courts are to construe a statute so as to give effect to the intent of the General Assembly. *In re Marriage of Ikeler*, 161 P.3d 663, 666 (Colo.2007). In doing so, the court must look first to the language of the statute and give the words and phrases used by the legislative body their plain and ordinary meaning, unless it would lead to an absurd result. *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 51 (Colo. 2001). A court must not give statutory language anything other than its plain meaning. *Barnes v. Dep't of Revenue*, 23 P.3d 1235, 1236 (Colo.App.2000). In the event of an ambiguity, the court must strive to give effect to the intent of the legislature and must adopt the statutory construction that best effectuates the purposes of the legislative

scheme, looking first to the plain language of the statute. *In re Marriage of Ciesluk,* 113 P.3d 135, 141 (Colo.2005).

■ In determining whether a statutory provision is intended by the legislature to be mandatory or simply discretionary, an appellate court must consider its plain meaning and also consider its legislative history, the subject matter, the importance of its provisions, the relationship between its provisions and the general objectives of the act, and, finally, whether or not there is a public or private right involved. *DiMarco v. Dep't of Revenue,* 857 P.2d 1349, 1351–52 (Colo.App. 1993).

■ Unless the General Assembly has clearly evidenced a contrary intent, time limits imposed upon public bodies generally have been construed as being discretionary rather than mandatory. *Id.* at 1352. Unless the context indicates otherwise, the word "shall" generally indicates that the provision is mandatory. Negative language, such as "in no event later than," also suggests a mandatory construction. *Id.* The crucial difference between statutes considered discretionary and those deemed mandatory is the consequence of noncompliance.

Because section 14–10–129(4) provides that a motion "shall" be heard and ruled upon "not later than seven days after the day of the filing of the motion," we conclude that the plain language of the statute indicates that this provision was intended to be mandatory. *See Wilson v. Hill,* 782 P.2d 874, 875 (Colo.App.1989). Further, the seven-day limitation is used twice in the statute: first, requiring a hearing within seven days of the filing of the motion and second, establishing a restriction on visitation which is effective during "such seven-day period." This reiteration of the time limit and the manner in which it is stated further indicate that the filing of the motion under section 14–10–129(4) is self-executing, that is, the stated restriction on parenting time takes effect immediately and continues until the hearing, which is required to be held within seven days. This confers upon a parent the power to unilaterally amend a court order to require supervised parenting time for an extremely limited period of time. The impact-

ed parent's remedy, in the event the motion is "substantially frivolous, substantially groundless, or substantially vexatious," is to recover reasonable attorney fees and costs. § 14–10–129(5), C.R.S.2007.

The apparent object of section 14–10–129(4) is to balance the need to protect children from "imminent physical or emotional danger" against the constitutional right of a parent to the care, custody, and control of his or her children. *See Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (constitutional right to care, custody, and control of child). It accomplishes the first goal by affording a procedure for immediate intervention and the latter goal by requiring a prompt hearing and ruling. The failure to hold a timely hearing threatens to infringe on the impacted parent's constitutional right by postponing that parent's opportunity to persuade the court that the restriction is not necessary.

We are persuaded that the time limit for the holding of a hearing under section 14–10–129(4) is mandatory as a safeguard for parental rights while, at the same time, permitting immediate intervention should the facts warrant it. We recognize that trial courts have a full schedule, which, in many cases, has been set for months or even years in advance. We further recognize that the time limitation imposed by section 14–10–129(4) can disrupt a docket. Further, we are aware that many trial courts have emergency dockets reserved for such matters on at least a weekly basis and, while the matter may have to be transferred to the judge handling that docket, these matters can be heard in most circumstances in a timely manner.

There is authority for father's argument that the failure to comply with a mandatory statute is jurisdictional. *See Wilson v. Hill,* 782 P.2d at 875. However, a another line of authority holds that a court does not lose personal or subject matter jurisdiction previously and properly obtained for failure to comply with the mandatory requirements of a procedural statute or rule. *See People in Interest of Clinton,* 762 P.2d 1381, 1387 (Colo.1988); *Eagle Peak Farms, Ltd. v. Lost Creek Ground Water Mgmt. Dist.,* 7 P.3d

1006, 1010 (Colo.App.1999); *Levin v. Anouna*, 990 P.2d 1136, 1137–38 (Colo.App.1999); *Nguyen v. Swedish Med. Ctr.*, 890 P.2d 255, 256 (Colo.App.1995). Nonetheless, the trial court may lose the authority to act.

*People in Interest of Clinton* involved an involuntary mental health commitment and a statute that required that an attorney be appointed "forthwith" when a person is certified for a short-term commitment. *Clinton*, 762 P.2d at 1382–83. The trial court did not appoint an attorney for eight days, or four business days, and the patient moved to dismiss at the first hearing on that basis. *Id.* On appeal, the supreme court stated, in pertinent part:

> A court's jurisdiction consists of two elements: jurisdiction over the parties (personal jurisdiction) and jurisdiction over the subject matter of the issue to be decided (subject matter jurisdiction). The People contend that the failure to appoint counsel forthwith in this case creates a personal jurisdiction defect which the respondent may waive expressly or by failure to raise the issue explicitly in a timely fashion. Clinton argues, and the court of appeals held, that the failure to appoint counsel forthwith creates a subject matter jurisdiction defect which cannot be waived and may be raised at any stage in the proceedings. We conclude that neither position is correct. Instead, the failure to appoint counsel forthwith is a statutory violation not implicating jurisdictional concerns.
>
> . . . .
>
> Personal jurisdiction "is based on having legal authority over the [respondent's person]."
>
> . . . .
>
> Subject matter jurisdiction "concerns the court's authority to deal with the class of cases in which it renders judgment." *Also*, "[i]t is not sufficient that the court has, in the abstract, the authority to decide the particular class of case which is before it. The court's authority must be invoked before it can act."

*Id.* at 1386–87 (emphasis added, citations omitted).

The court then postulated a two-part test to determine whether the failure to abide by the statute constituted reversible error. In summary, that test is: (1) whether the failure violates an essential condition of the statute which may implicate due process considerations; and (2) whether the party has been prejudiced. *Id.* at 1389.

We conclude that the seven-day limitation in section 14–10–129(4) is an essential condition of the statute. We have already stated that father has a constitutional right to the care, custody, and control of his children. The statute provides a mechanism by which that right is significantly restricted by the action of an adverse party without the benefit of a hearing and therefore implicates father's right to due process. We also conclude that father was prejudiced by several months of supervised visitation.

Therefore, we hold that in the event the trial court fails to conduct a hearing within seven days of the filing of a section 14–10–129(4) motion as required by the statute, the automatic sanction of supervised visitation terminates. Further, we are not persuaded that father waived his objection to the court's failure to rule within seven days by participating in the hearings on mother's motion because the trial court indicated that it was proceeding under both section 14–10–129(4) and section 14–10–129(1)(b)(I), C.R.S.2007.

### III. Father's Section 14–10–129(4) Motion

▆ Father contends that the trial court abused its discretion in denying his own section 14–10–129(4) motion without a hearing. We agree.

On July 18, 2006, father, an attorney appearing pro se, filed a multi-faceted verified motion seeking, inter alia, to restrict mother's parenting time under section 14–10–129(4), stating:

> [The children] were with their mother . . . from July 9 thru July 14, 2006. . . . Within ten minutes of their return to [father's] care, both children described their anger and concern about the behavior of [mother] during the previous week, including that [mother] had been drinking very heavily the entire week and was "completely drunk" at least twice during the vacation

period (according to [daughter]) or three times (according to [son]).... According to [daughter] her mother was so drunk on Monday (July 10, 2006) during the day that she could not even remember her own daughter's ... name. Prior to making these statements neither [son] nor [daughter] had been told by [father] about the pending court filings.

....

[Father provides a somewhat extended discussion of the problem.] It is simple to understand that the untreated abuse problem has not resolved itself but progressed to the point where the children are in clear and imminent physical and emotional danger.

Earlier, on July 10, 2006, father had filed a motion seeking, inter alia, to modify custody pursuant to section 14–10–129(1)(a)(I), C.R.S. 2007, which devoted considerable space, including some identical paragraphs, to allegations of mother's alcohol problem together with a lengthy list of similar complaints about mother's treatment of the children.

The trial court disposed of the July 18, 2006 motion by an order entered the next day stating in part:

The Court FINDS that [father's] Verified Motion to Restrict Parenting Time is based on the purported statements from the minor children of the parties.... The Court notes that the motion is silent as to any information regarding criminal charges of child abuse, police reports of any kind, reports or investigations by a Social Services [A]gency regarding possible child neglect or abuse, or verified statements of any person which would corroborate the allegations and support a finding by this Court that the minor children are or have been placed in imminent physical or emotional danger.

....

The Court FINDS upon review of the entire case, that the record herein is replete with documentation and Court Orders regarding the repeated and continuing use of the children by both parties, as vehicles to attack the other party. The Court further FINDS that the record is clear, and the Court has previously FOUND, that the

Respondent has continuously engaged in a pattern of attempting to alienate the minor children from the Petitioner. The Court FINDS that the allegations in the instant motion are consistent with this history.

We agree with father that section 14–10–129(4) does not require any third-party verification—a party's verification suffices under the statute.

What is apparent from the trial court's order is that it does not believe father. However, that credibility issue could only have been decided after a hearing, however brief. Our review discloses that the bulk of a very large record relates to an ongoing post-decree fight over, or involving, the children. Determining a section 14–10–129(4) motion, even under the circumstances of this case, on the basis of credibility without a hearing is not in conformity with the statute and is incompatible with the purpose of the statute.

Section 14–10–129(4) is designed for emergency intervention that is occasioned by an imminent danger. Motions made under the statute require an immediate hearing, within seven days, unless the allegations are facially insufficient. "Facially insufficient" is a frequently used but rarely defined term. "Facially sufficient" means "appearing valid on its face." *Black's Law Dictionary* 627 (8th ed.2004). The term "insufficient evidence" means "[e]vidence that is inadequate to prove or support a finding of something" or "a case that is not strong enough to even get to the fact finder." *Id.* at 597. As used here, "facially insufficient" means that, after taking all the allegations in the verified motion as true, there is no set of facts or circumstances that could give rise to the conclusion that the children are in imminent danger of physical or emotional injury.

Under this test, father's verified motion was facially sufficient, and it was error for the trial court to disregard it without a hearing. As a matter of law, we cannot ignore the possibility that a habitually intoxicated custodial parent, whether intoxicated by alcohol or drugs, if that be the case here, could place children in imminent danger of physical or emotional injury.

Here, the verified motion alleged that mother was intoxicated, at times extremely intoxicated, for an extended period during which she was caring for the children—and the children were concerned enough to report the matter—which is some evidence of emotional injury. In addition, father alleged that this problem was likely to recur. Therefore, we conclude that the trial court erred in dismissing the verified motion without a hearing.

We, of course, are aware that section 14–10–129(4), with its immediate and drastic implications for children, parents, and courts, is capable of being abused. However, we have considerable confidence that practicing attorneys, aware of the implications of such a motion and the value of their own credibility, will be circumspect in filing such motions. For all litigants, including those appearing pro se, we are, in addition, aware of the attorney fees sanction the trial court is required to impose in the event it concludes that the motion was substantially frivolous, groundless, or vexatious. § 14–10–129(5). Further, we do not read the statute as limiting the trial court to the mandated sanction.

Ultimately, however, the risk of abuse is counterbalanced by the need to protect children while, at the same time, recognizing the important rights of both parents to parenting time with their children and the children's rights to parenting time with each parent. Whether section 14–10–129(4) strikes the proper balance is, ultimately, a question for the General Assembly.

### IV. Section 14–10–129(1)(b)(I)

■ As previously discussed, at the hearing on July 3, 2004, the trial court indicated that the matter would proceed under both section 14–10–129(4) and section 14–10–129(1)(b)(I). Father did not object to that procedure at the time the trial court announced that it would proceed on that basis, did not subsequently object to the procedure in the trial court, and did not raise the issue on appeal until his petition for rehearing. Therefore, while we address section 14–10–129(1)(b)(I) here, we express no opinion as to whether it is otherwise appropriate for the trial court to proceed under that section

when a pending motion id predicated on section 14–10–129(4) only or whether it is appropriate to proceed simultaneously under both subsections.

After extensive hearings, the trial court entered a detailed order partially restoring father's reduced unsupervised parenting time. The trial court found that father had been unable to mitigate his anger toward mother, and that his behavior, coupled with the precarious psychological condition of the children, had endangered the children. In support of its findings, the trial court cited several witnesses who had testified at trial, as well as the court's observation of father's demeanor. The court's findings are supported by the record.

Because this order was entered more than seven days after the motion to restrict father's parenting time was filed, the court was without authority to issue the order under section 14–10–129(4). However, under section 14–10–129(1)(b)(I), the court could, and did reduce father's parenting time after finding that father's parenting time would endanger the children's physical health or significantly impair their emotional development.

Because we are persuaded that the court's findings are sufficient to support an order restricting father's parenting time under section 14–10–129(1)(b)(I), we uphold the October 14, 2004 order on that basis.

### V. October 11, 2005 Sanctions Order

■ Father contends that the trial court erred in imposing sanctions against him under section 14–10–129.5, C.R.S.2007, in its order of October 11, 2005. He argues that the trial court erred in imposing sanctions without a hearing, and that it erred in doing so based upon an unverified motion. We agree.

Section 14–10–129.5(1) provides:

Within thirty days after the filing of a verified motion by either parent or upon the court's own motion alleging that a parent is not complying with a parenting time order or schedule and setting forth the possible sanctions that may be imposed by the court, the court shall determine from the verified motion, and response to the

motion, if any, whether there has been or is likely to be substantial or continuing noncompliance with the parenting time order or schedule and either:

(a) Deny the motion, if there is an inadequate allegation; or

(b) Set the matter for hearing with notice to the parents of the time and place of the hearing as expeditiously as possible; or

(c) Require the parties to seek mediation and report back to the court on the results of the mediation within sixty days.... At the end of the mediation period, the court may approve an agreement reached by the parents or shall set the matter for hearing.

If the language of a statute is plain and its meaning is clear, it must be applied as written. *Kerns v. Kerns,* 53 P.3d 1157, 1160 (Colo.2002). Section 14–10–129.5(1) is clear;

it requires a verified motion. Thus, because mother did not file such a verified motion, the order granting the sanctions must be vacated.

The order dated October 14, 2004, is affirmed. The orders dated June 14, 2004, and October 11, 2005 are vacated. Because of our resolution we need not address the order of January 18, 2005.

Judge TAUBMAN and Judge TERRY concur.