24CA0196 Marriage of Stone 03-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0196
El Paso County District Court No. 22DR30050
Honorable Diana K. May, Judge

---

In re the Marriage of

Laroux Stone,

Appellee,

and

Brian Stone,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

---

No appearance for Appellee

Beltz & West, P.C., Daniel A. West, Colorado Springs, Colorado, for Appellant

¶ 1    In this post-dissolution of marriage case, Brian Stone (husband) appeals the district court's judgment that held him in contempt and imposed remedial and punitive sanctions. We reverse the judgment in part, affirm it in part, and remand the case for further proceedings.

## I.    Relevant Facts

¶ 2    In August 2022, the district court dissolved husband's marriage with Laroux Stone (wife) and entered permanent orders.

¶ 3    Approximately nine months later, wife filed a motion for contempt against husband, alleging that he had not complied with various provisions of the court's permanent orders. After a hearing, the court rejected one alleged basis of contempt, but it otherwise found that husband had violated the provisions of the permanent orders. Specifically, the court found that husband had failed to (1) transfer to wife the titles of a Ford truck and a Toyota car within thirty days of the permanent orders; (2) set up an account with Family Support Registry (FSR) before leaving for his overseas military deployment; (3) pay child support and maintenance obligations; (4) provide wife with his pre-permanent orders communications regarding the status of his separation pay from the

1

military; (5) remove his personal property from the marital home; and (6) facilitate listing the marital home for sale, including by not signing the necessary documents or complying with their real estate agent's recommendations.

¶ 4     The court imposed remedial and punitive sanctions for each of husband's violations as follows:

- For the transfer of the vehicles' titles, the court ordered husband to serve a thirty-day jail sentence as a punitive sanction. The court also determined that although husband was "in remedial contempt," it couldn't enter any remedial orders to purge the contempt because husband had since transferred the car title to wife and wife had given the truck back to husband. The court then sanctioned husband by ordering him to pay wife's attorney fees and costs.

- For the FSR account, the court determined that although husband didn't comply with the court's deadline, he had later set up his FSR account. It found him in remedial and punitive contempt, and it ordered him to serve five days in jail.

- For the unpaid child support and maintenance, the court sanctioned husband by ordering him to serve a sixty-day jail sentence and pay his outstanding obligations.

- For the separation pay communications, the court sanctioned husband by ordering him to serve a thirty-day jail sentence and provide wife with the necessary information regarding his communications.

- For the failure to remove his personal property from the marital home, the court declined to impose any punitive sanctions. But it imposed remedial sanctions that required husband to remove his remaining personal property so that the home could be sold.

- For not facilitating the marital home sale listing, the court ordered husband to execute the necessary documents and cooperate with wife and the real estate agent to accomplish the home sale. It further ordered husband to serve thirty days in jail.

¶ 5 Concerning the jail sentences, the court said it wasn't imposing them "right now" but it also wasn't "suspending [them]." Rather, the court explained that it would review those sentences in

ninety days and, in doing so, take into consideration whether husband had complied with the court's orders. The court also said that its remedial sanctions included ordering husband to pay wife's attorney fees and costs, which it later determined amounted to over $16,500.

¶ 6 After ninety days, the court held a review hearing. The court considered the extent to which husband had complied with its orders and ultimately declined to impose any of the jail sentences.

## II. Governing Legal Standards

¶ 7 A court may hold a party in contempt for "disobedience or resistance" to a lawful court order. C.R.C.P. 107(a)(1). When a court holds a party in contempt, it may impose remedial or punitive sanctions. *See In re Marriage of Sheehan*, 2022 COA 29, ¶¶ 24, 57. The court may combine remedial and punitive sanctions, but it must distinguish between the sanctions and make the proper supportive findings. *See id.* at ¶ 58; *see also* C.R.C.P. 107(e).

¶ 8 Whether a party is in contempt lies within the district court's sound discretion. *In re Marriage of Webb*, 284 P.3d 107, 108 (Colo. App. 2011). We will uphold the court's decision absent a showing that it acted in a manifestly arbitrary, unreasonable, or unfair

4

manner, or that it misapplied the law. *Sheehan*, ¶ 23. We defer to the court's factual findings unless they are clearly erroneous. *Webb*, 284 P.3d at 108-09. And we review de novo the court's application of the law. *See People in Interest of K.P.*, 2022 COA 60, ¶ 22.

### III. Vehicles' Titles and FSR Account

¶ 9   Husband contends that the district court erred by holding him in remedial contempt for not transferring the car and truck titles to wife and for not setting up the FSR account. We agree.

¶ 10   Remedial sanctions are intended to coerce a party's compliance with a court order. *In re Parental Responsibilities Concerning A.C.B.*, 2022 COA 3, ¶ 24. To impose remedial sanctions, the court must find that the contemnor failed to comply with a lawful court order, knew of the order, and has the present ability to comply with the order. *Id.* The court must also specify the means by which the contemnor may purge the contempt and find that the contemnor has the present ability to satisfy that purge clause. *In re Estate of Elliott*, 993 P.2d 474, 479 (Colo. 2000); *see* C.R.C.P. 107(d)(2). When the contemnor can't "undo" the

contemptuous conduct, remedial sanctions aren't available. *Aspen Springs Metro. Dist. v. Keno*, 2015 COA 97, ¶ 32.

¶ 11 The court found that husband hadn't transferred the titles to the car or truck within thirty days as directed by its permanent orders. But it determined that, at the time of the contempt hearing, "he ha[d] complied with" his obligation. It explained that husband had transferred the car title to wife and that wife had relinquished ownership of the truck to husband. The court then determined that "there's nothing remedial that I can really issue on this" matter.

¶ 12 The court's findings therefore reflect, and the record confirms, that husband didn't have the present ability to comply with the court's order or the present ability to purge his contempt. By the time of the contempt hearing, husband had (1) already completed the required action concerning the car title and (2) couldn't complete the transfer of the truck title since wife had returned it to husband. *Cf. Kirkman v. Faulkner*, 524 P.2d 648, 650 (Colo. App. 1974) (acknowledging that for title to pass to the grantee, the grantee must accept it). Husband's noncompliance was his failure to transfer the vehicles' titles within thirty days. But husband can't go back in time and comply with the court's deadline. *See Aspen*

*Springs*, ¶ 32. And he couldn't do anything presently to purge that contempt. Indeed, the court acknowledged as much by not specifying a purge clause. *See* C.R.C.P. 107(d)(2); *Webb*, 284 P.3d at 110. The court therefore erred by holding husband in remedial contempt related to the transfer of the vehicles' titles, and we reverse this determination. *See Aspen Springs*, ¶ 32.

¶ 13 Likewise, the court found that husband hadn't set up the FSR account before his deployment but later complied with this order and set up the account. As of the contempt hearing, husband didn't have the present ability to comply or purge his contempt because he had already completed his obligation to set up the account, albeit late. He couldn't do anything further to comply with the court's order. Because the court couldn't properly enter this remedial contempt determination, we also reverse this portion of the court's judgment. *See id.*

¶ 14 Given the unavailability of remedial contempt sanctions, the court couldn't order husband to pay wife's attorney fees and costs related to his failure to timely comply with the court's orders to transfer the vehicles' titles and set up the FSR account. Attorney fees and costs may be awarded only as a component of remedial

7

sanctions. *Webb*, 284 P.3d at 109. A court can't award them as the sole remedial sanction or as a component of punitive sanctions. *Aspen Springs*, ¶ 31; *Webb*, 284 P.3d at 109-10. Thus, we also reverse the portion of the court's judgment ordering husband to pay wife's attorney fees and costs in connection with these remedial contempt determinations.

¶ 15    Although these weren't the only determinations of remedial contempt, the court didn't explain how each of its contempt determinations impacted its attorney fees and costs decision or the amount it awarded. Thus, given our reversal of the remedial contempt determinations related to the vehicles' titles and FSR account, we must also reverse the attorney fees and cost order and remand this issue to the district court for reconsideration. *See Nagy v. Landau*, 807 P.2d 1227, 1229 (Colo. App. 1990) (an award of attorney fees is necessarily reversed where the judgment upon which it relied was reversed). On remand, the court shall determine whether to award attorney fees and costs as a component of the remaining remedial sanctions, and exercise its discretion to determine the amount, if any, reasonably incurred in connection with the contempt proceedings. *See Aspen Springs*, ¶ 35; *Webb*,

284 P.3d at 109-10; *cf. Regency Realty Invs., LLC v. Cleary Fire Prot., Inc.*, 260 P.3d 1, 8-9 (Colo. App. 2009) (recognizing that a party may recover attorney fees and costs inextricably intertwined with prosecuting its claims).  In doing so, the court must make sufficient findings of fact and conclusions of law to provide a clear understanding of the basis of its award.  *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9.

### IV.   Husband's Ability to Transfer the Truck's Title

¶ 16    Husband next challenges the district court's factual finding that he had the ability to transfer the truck's title to wife.  He argues that the holder of the truck loan possessed the truck's title and that he therefore couldn't execute the title transfer.  Although we have reversed the court's remedial contempt determination concerning the truck's title, this finding also concerns the court's punitive contempt determination.  We thus review his argument and decline to disturb the court's finding.

¶ 17    When imposing punitive contempt sanctions, the court must find that, at some point, the contemnor had the ability to comply with the court's order but didn't do so.  *See Sheehan*, ¶¶ 25, 41.

¶ 18    At the contempt hearing, wife testified that the truck was subject to a loan and that the holder of that loan possessed the truck's title.  She explained, however, that this circumstance didn't impede husband's ability to execute the title transfer.  She testified that she had secured the money necessary to pay off the remaining loan balance and that she tried to arrange a time with husband for them to meet with the lienholder, pay off the debt, and complete the title transfer.  She testified that despite her efforts, husband intentionally interfered with the title transfer and refused to comply.

¶ 19    The court credited wife's testimony, finding that husband had the ability to transfer the title before he was deployed overseas but refused to do so.  Given this record support, we won't disturb the court's finding that husband could have transferred the truck's title to wife within thirty days of its entry of permanent orders.  *See Webb*, 284 P.3d at 108-09.

V.    Conditional Punitive Contempt Sanctions

¶ 20    Husband contends that each of the district court's punitive sanctions must be set aside because the court improperly suspended those jail sentences and conditioned its sanctions on

husband's future compliance with the court's orders. We decline to set aside the sanctions.

¶ 21    Punitive sanctions are designed to punish "conduct that is found to be offensive to the authority and dignity of the court." C.R.C.P. 107(a)(4). Such sanctions take the form of an unconditional fine, a fixed sentence of imprisonment, or both. C.R.C.P. 107(a)(4); *Sheehan*, ¶ 57. The court may reconsider any punitive sanctions, but it can't suspend any part of the punitive sanctions or condition the sanctions on the contemnor's performance or nonperformance of a future act. C.R.C.P. 107(e); *Sheehan*, ¶ 57.

¶ 22    Husband highlights that the court sentenced him to jail for its punitive sanctions but then delayed imposing the jail sentences for ninety days and conditioned them on husband's noncompliance with its orders. But even if we assume that the court improperly suspended its punitive sanctions, the court declined to impose any of the jail sentences at the review hearing. Husband develops no argument explaining how he suffered any prejudice from the court delaying its decision on whether to impose its punitive sanctions. *See People in Interest of A.C.*, 170 P.3d 844, 845 (Colo. App. 2007)

(concluding that an alleged error, without a valid allegation of prejudice, is not grounds for reversal); C.A.R. 35(c) (appellate court may disregard error that doesn't affect a substantial right of the parties). We therefore decline to disturb the court's ruling.

## VI. Characterization of the Court's Sanctions

¶ 23 Husband also argues that the court's contempt sanctions can't be objectively characterized as remedial or punitive. But again, he fails to explain how such circumstances, even if true, warrant reversal. *See A.C.,* 170 P.3d at 845.

¶ 24 Husband relies on two aspects of the court's ruling to show the "ambiguous nature" of the court's contempt determinations. First, he again highlights that the court's punitive sanctions were conditioned on his future noncompliance with the court's orders and argues that the conditional nature of the sentences resembled a remedial sanction. *See In re Marriage of Crowley*, 663 P.2d 267, 269 (Colo. App. 1983) (If a jail sentence "is conditioned upon the contemnor's future performance of a duty he has to another person, then the contempt order is no longer punitive, but becomes remedial."). But even if the punitive sanctions could be characterized as remedial sanctions, as noted above, husband

12

doesn't explain how he was prejudiced by that circumstance. *See A.C.*, 170 P.3d at 845. Except for the remedial contempt determinations that we've reversed above, the court made the necessary findings in support of its determinations to impose remedial and punitive sanctions. Husband doesn't contest those findings. *See* C.R.C.P. 107(e) (allowing a court to combine remedial and punitive contempt sanctions when it makes the proper supportive findings). Moreover, even if the characterization of the jail sentences was unclear, the court ultimately declined to impose them.

¶ 25     Second, husband highlights the improper award of attorney fees concerning the court's contempt determination related to the FSR account. *See Aspen Springs*, ¶ 31; *Webb*, 284 P.3d at 109-10. We have reversed that determination, and husband develops no argument to establish that this error prejudicially impacted the other aspects of the court's judgment. *See In re Marriage of Drexler*, 2013 COA 43, ¶ 27 (recognizing that the appellant must explain the basis of the court's error and provide supporting legal authority).

¶ 26     We therefore reject husband's contention that ambiguities in the court's contempt sanctions warrant reversal.

## VII.   Attorney Fees and Costs Award

¶ 27     Last, husband contends that the district court erred by ordering him to pay wife's attorney fees and costs.  He argues that attorney fees and costs may only be awarded in connection with a court's remedial contempt sanctions, not punitive sanctions.  *See Webb*, 284 P.3d at 109-10.  He then asserts that the court didn't explain its decision to award wife all her fees and costs, especially when it rejected one allegation of contempt that was legally and factually dissimilar to the court's remedial contempt determinations.

¶ 28     Given our reversal of the attorney fees and costs ruling and our direction for the court to reconsider its determination on remand, we decline to address husband's contentions.  As explained above, the court on remand must make sufficient findings of fact and conclusions of law to explain any award of attorney fees and costs that it imposes as a component of its remedial contempt sanctions.

## VIII.  Disposition

¶ 29     We reverse the portion of the court's contempt judgment concerning the remedial contempt for not transferring the vehicles'

14

titles and setting up the FSR account.  We also reverse the award of attorney fees and costs and direct the court to reconsider that issue on remand consistent with this opinion.  The contempt judgment is otherwise affirmed.

JUDGE FREYRE and JUDGE SCHOCK concur.